UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| **KYLE OGDEN** and **ANTHONY LINDSEY**, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **PIGEON FREIGHT SERVICES INC.,** and **SERGIU TINTUIC,** <br><br> Defendants. | Case No. 1:23-cv-04458 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT**

**I.       INTRODUCTION**

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, Plaintiffs Kyle Ogden and Anthony Lindsey hereby submit their motion for default judgment against Defendants Pigeon Freight Services, Inc. and Sergiu Tintuic.

Plaintiffs have brought class action claims Defendants under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, and Illinois common law. See ECF No. 16 (Am. Compl.). Plaintiffs alleged that throughout their employment they were improperly classified by Defendants as independent contractors, and, as a result, were subject to unlawful deductions and expenses in violation of the IWPCA. Id. Plaintiffs further alleged that the deductions taken from their pay resulted in Plaintiffs receiving less than the minimum wage, in violation of the FLSA and that Defendants were unjustly enriched. Id.

Plaintiffs moved for entry of a default against Defendants on November 9, 2023, and the Court entered a default against both Defendants on November 14, 2023. ECF Nos. 22-23. As

detailed in their Motion for Entry of Default, Plaintiffs have made ongoing attempts to serve Defendants. ECF No. 22. To date, Defendants have not made an appearance in this case. Id. Plaintiffs now respectfully request the Court to enter default judgment against Defendants Pigeon Freight and Tintuic, and to award Plaintiffs their damages, including an award of attorney's fees and costs. Plaintiffs' request is supported by their affidavits, attached hereto as Exhibits A and B, as well as the affidavit of Bradley Manewith, attached hereto as Exhibit C.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs worked as delivery drivers for Pigeon freight, making deliveries in Illinois and other states. See Declaration of Kyle Ogdon (attached hereto as Exhibit A) ¶ 2; Declaration of Anthoy Lindsey (attached hereto as Exhibit B) ¶ 2. Plaintiffs were classified by Pigeon Freight as independent contractors. Id. Plaintiffs were paid a set number of cents per mile for the deliveries they made. Ex. A ¶ 3; Ex. B. ¶ 3.

Pigeon Freight exerted significant behavioral and financial control over Plaintiffs' work, as specified in Defendants' policy manuals and otherwise in fact. See ECF No. 16, ¶ 18. For example, Plaintiffs drove trucks with the "Pigeon Freight" logo on them. Ex. A ¶ 4; Ex. B. ¶ 4. Plaintiffs received delivery assignments from Pigeon Freight's dispatchers, including the times in which they had to make the deliveries. Ex. A ¶ 5; Ex. B. ¶ 5. Plaintiffs had to check in with these dispatchers regularly during the course of each delivery. Id. Plaintiffs could not turn down the deliveries assigned to them. Id. Plaintiffs also had to follow various rules set by Pigeon Freight, including immediately reporting accidents, not having pets or passengers in their trucks, making any repairs at the repair shop designated by Pigeon Freight, and submitting maintenance reports. Ex. A ¶ 6; Ex. B. ¶ 6. Plaintiffs worked for Pigeon Freight full time, working, on average, 70 hours a week. Ex. A ¶ 7; Ex. B. ¶ 7. They could not work anywhere else while working for Pigeon Freight. Id.

Pigeon Freight also took a number of deductions from Plaintiffs' pay. For example, Plaintiffs were required to pay for occupational accident insurance, vehicle maintenance, and roadside service. Ex. A ¶ 8; Ex. B. ¶ 8; ECF No. 16 ¶ 23. Defendants also took deductions from Plaintiffs' pay for alleged violations of Defendants' policy manual, including speeding or failure to turn in maintenance reports. Id.; ECF No. 16 ¶ 24. Plaintiffs were not informed of these deductions in advance and did not have an opportunity to contest them. Ex. A ¶ 10; Ex. B. ¶ 9. In addition, Plaintiffs were required to incur expenses for repair parts and tools in the course of their work for Pigeon Freight, for which they were not reimbursed. Ex. A ¶ 11; Ex. B. ¶ 10. In addition, as a result of the deductions taken from their pay, there were weeks in which Plaintiffs' compensation fell below minimum wage. Ex. A ¶ 12; Ex. B. ¶ 11.

Plaintiffs filed their class and collective action Complaint in this matter on July 11, 2023. ECF No. 1. The Complaint was served on Defendants on August 4, 2023. ECF No. 13. Plaintiffs subsequently filed an Amended Complaint (ECF No. 16), which was served on Pigeon Freight on September 29, 2023 (ECF No. 17) and was served on Sergiu Tintuic on October 12, 2023. ECF Nos. 13 and 18. Defendants' Answers to the Amended Complaint were due on October 20 and November 2, respectively. See ECF No. 19. Since this case was filed Defendants have not had any contact with Plaintiffs' Counsel, either on their own or through attorneys. See ECF Nos. 19, 21.

To date, Defendants have failed to have an attorney enter an appearance or in the alternative enter a pro se appearance, and thus are unable to plead or otherwise defend this case. Plaintiffs filed a Motion for Entry of Default on November 9, 2023. ECF No. 22. The Motion was granted by the Court on November 14, 2023. ECF No. 23.

### III. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure provides that default is warranted when a

party "has failed to plead or otherwise defend." "When default has been entered against a defendant, the facts alleged in the complaint against that defendant may not be contested. Rather, entry of default establishes, as a matter of law, that the defaulted defendants are liable to the plaintiff as to the well-pleaded factual allegations in the complaint, but not as to the amount of damages." MNW, LLC v. Mega Auto Grp., Inc., 884 F. Supp. 2d 740, 754 (N.D. Ind. 2012) (citing Davis v. Hutchins, 321 F. 3d 641, 648 (7th Cir. 2003)); Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1323 (7th Cir. 1983). Upon a motion for entry of default judgment, the "court must conduct a hearing on damages unless 'the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" Pharmerica Midwest, LLC v. Bravo Care of Galesburg, Inc., 2021 WL 1061970, at *2 (C.D. Ill. Mar. 19, 2021) (quoting Dundee Cement, 722 F.2d at 1323).

## IV. ARGUMENT

### A. Plaintiffs were Employees of Pigeon Freight under the IWPCA

Illinois uses the "ABC" test to determine employment status for purposes of the IWPCA. See 820 ILCS 115/2. Under this test, an individual is considered an employee unless the alleged employer can establish that (A) the individual is free from control and direction over the performance of his work, both under his contract of service with his and in fact; (B) the work is performed either outside the usual course of business of the employer or outside all of the places of business of the employer; and (C) the individual is customarily engaged in an independently established trade, occupation, profession or business. Id. This test is conjunctive, meaning that the alleged employer must establish *all three* prongs to show an individual is not an employee.

4

See 56 Ill. Admin Code § 300.460; see also Costello v. BeavEx, Inc., 303 F.R.D. 295, 309 (N.D. Ill. 2014).[1]

It is beyond dispute that Plaintiffs were employees under Prong B. Plaintiffs' work was squarely within the business performed by Defendants under Prong B of the ABC test – Pigeon Freight is a company providing delivery and transportation services - the very services which Plaintiffs performed.[2] When considering an employer's usual course of business, Illinois courts focus on whether a worker performs services that are necessary to the business of the employer or services that are merely incidental. Carpetland U.S.A Inc. v. Ill. Dep't of Emp't Sec., 201 Ill. 2d 351, 386 (2002) (citing 56 Ill. Adm. Code § 2732.200(f)(1) (services "not necessary to the employing unit's business" are outside the usual course of business)). For example, in BeavEx Inc., 303 F.R.D. at 310, a case with facts similar to those here, the court found that the defendant could not meet its burden because it was a delivery service company for whom plaintiffs worked as delivery drivers. More specifically, the Court found that where "BeavEx is a same-day delivery service company, and its primary function is to provide motor vehicle transportation of property for compensation," and "[t]he Plaintiffs were courier drivers who performed delivery services for BeavEx," it was "undisputed and beyond doubt that BeavEx's delivery drivers performed work in the usual course of BeavEx's package and delivery business." Id. Similarly, in a recent case involving over-the-road delivery drivers, Tsybikov v. Dovgal, 2022 WL 1238853, at *3 (N.D. Ill. April 27, 2022) the court granted summary judgment in the delivery drivers' favor, finding that

---

[1] Multiple courts considering a similar set of facts have found delivery drivers to be employees under the IWPCA. See BeavEx Inc., 303 F.R.D. at 311 (finding last-mile delivery drivers were employees); In re Fedex Ground Package Sys., 2010 WL 2243246, at *6 (N.D. Ind. 2010) (finding FedEx drivers were employees under the IWPCA); AFM Messenger Serv., Inc. v. Dep't of Emp't Sec., 198 Ill. 2d 380, 408 (2001) (finding courier drivers were employees of courier company); Chicago Messenger Serv. v. Jordan, 356 Ill. App. 3d 101, 116 (2005) (same); Zelney v. Murphy, 387 Ill. 492, 505 (1944) (same); Rozran v. Durkin, 381 Ill. 97, 105 (1942) (same).

[2] Pigeon Freight's website prominently features the slogan "Delivering Your Cargo Through America". www.pigeonfreight.com (last visited December 7, 2023).

they were employees of defendants under Prong B because "Defendants' business was trucking which is the trade in which the Plaintiffs were engaged.".[3]

Further, Plaintiffs performed work within Pigeon Freight's places of business. Plaintiffs were required to communicate on a daily basis with Pigeon Freight's dispatchers regarding their assignments; and drive Pigeon Freight's company trucks and/or trailers. Moreover, "[a]n employer's place of business is not limited only to its own home offices, but can extend to any location where workers regularly represent an employer's interest." BeavEx Inc., 303 F.R.D. at 310.[4] Instead, "roadways, delivery routes, sales territories and customer premises are the company's places of business when the worker is representing the company's interest. In re Fedex Ground Package System, Inc. Empl. Practices Litig., 2010 WL 2243246, at *6 (N.D. Ind. May 28, 2010) (collecting cases). Here the Plaintiffs were stopping at, unloading and loading cargo on a daily basis at the business locations of Pigeon Freight's customers. Under the case law described above this work is performed within Pigeon Freight's places of business.

Although this is sufficient for Plaintiffs to show they are employees under one of the three

---

[3] Similarly, the Illinois Supreme Court found in Carpetland that "[w]hen one is in the business of dispatching limousines, the services of chauffeurs are provided in the usual course of business because the act of driving is necessary to the business." Carpetland, 201 Ill. 2d at 386 (citing O'Hare-Midway Limousine Serv., Inc. v. Baker, 232 Ill App. 3d 108, 113 (Ill. App. Ct. 1992)); see also AFM Messenger Serv., 198 Ill. 2d at 402-03 (finding that the defendant courier companies' "usual course of business" was the delivery of packages); Chicago Messenger Serv., 356 Ill. App. 3d at 107 (finding that the defendant, a courier company, had failed to establish that plaintiffs, courier drivers, performed work outside the defendant's usual course of business); In re FedEx, 2010 WL 2243246, at *6 (granting delivery driver plaintiffs summary judgment under the IWPCA based on a finding that FedEx Ground could not show that drivers worked outside of its usual course of business).

[4] See also AFM Messenger Serv. v. Dep't of Emp't Sec., 315 Ill. App. 3d 308, 315 (2000) (finding that the roadway was the defendant courier companies' usual place of business); Chicago Messenger Serv., 356 Ill. App. 3d at 112 (a "delivery route" may constitute a putative employer's place of business); O'Hare-Midway Limousine Serv., 232 Ill. App. 3d at 113 (place of business included roads traveled where drivers represented the interests of the company whenever they picked up passengers); Superior Life, Health & Accident Ins. Co. v. Bd. of Review of Unemployment Comp. Comm'n, 127 N.J.L. 537, 540 (Sup. Ct. 1942) (in case involving salesmen with assigned territories, "the 'business of the enterprise'…was at no fixed place but the services were to be performed at any place within the prescribed area where the [customers] were located …"); In the Matter of D.W.T., Review Bd. Dec., 1997 WL 356489 (N.J. Adm. March 12, 1997) (explaining that a place of business can include delivery routes or customers' homes or other places workers must report to).

prongs f the "ABC" test,[5] Plaintiffs were also clearly employees of Pigeon Freight under Prong C. Specifically, Pigeon Freight cannot show that Plaintiff and other delivery drivers operate an independently established trade, occupation, profession, or business. 820 Ill. Comp. Stat. 115/2.[6] In AFM Messenger Serv., 198 Ill. 2d at 401, the Illinois Supreme Court, examining facts identical to this case, found that the delivery drivers did not own independent businesses because the drivers depended on AFM to sustain them: AFM procured customers and set delivery prices, made delivery assignments, billed customers, set commission rates, paid the drivers, and maintained the right to terminate its relationship with drivers at any time. AFM could not "demonstrate that the drivers were able to operate their 'delivery businesses' without the benefit of a relationship with AFM, **or another messenger service like AFM.**" Id. at 401 (emphasis added); see also Veterans Messenger Serv., Inc. v. Jordan, 393 Ill. App. 3d 715, 722 (2009) (delivery company failed to meet Prong C because it presented no evidence that its "couriers could operate their delivery services without the solicitation of customers by [the company] or another similarly situated 'delivery brokerage service.'").

The same reasoning applies in this case. Plaintiffs had no financial, proprietary or other interest in their routes or the commercial transactions involved. They worked for Pigeon Freight full time, and were required to check in with Pigeon Freight's dispatchers on a regular basis.

---

[5] See 56 Ill. Admin. Code § 300.460(a) (stating that "all three conditions enumerated in Section 2 of the [IWPCA] must be satisfied for an independent contractor exemption to apply."); BeavEx, Inc., 303 F.R.D. at 309; Byung Moo Soh v. Target Mktg. Sys., Inc., 353 Ill. App. 3d 126, 132 (2004); see also Novakovic v. Samutin, 354 Ill. App. 3d 660, 668 (2004) finding that all three prongs of the IWPCA's employment test must "be met in order for an individual to fall within the statutory exception of the [IWPCA's] definition of employee").

[6] "'Engaged in an independently established trade, occupation, profession or business' . . . means that the individual performing the services has a proprietary interest in such business, to the extent that he/she operates the business without hindrance from any other person and, as the enterprise's owner, may sell or otherwise transfer the business." 56 Ill. Admin. Code § 2732.200(e). See also Carpetland U.S.A., 201 Ill. 2d at 393; Novakovic, 354 Ill. App. 3d at 670 (an individual has a proprietary interest in the business when he can sell, give away, or operate it without any hindrance from any other party). An independent business "must enjoy a 'degree of economic independence such that the enterprise could survive any relationship with the particular person contracting for services.'" AFM Messenger Serv., 198 Ill. 2d at 401 (internal citation omitted).

Pigeon Freight's dispatchers assigned deliveries to Plaintiffs, Pigeon Freight negotiated the rates for these deliveries, and Plaintiffs were not able to turn down the deliveries assigned to them. Plaintiffs also drove trucks with the Pigeon Freight logo on them. Id. ¶ 62.[7] They could not use these trucks to make deliveries for other companies, and they did not have their own trucks. They were not permitted to, and in fact were unable to, work elsewhere while performing deliveries for Pigeon Freight and relied on Pigeon Freight for their work and income.

Plaintiffs were also employees of Pigeon Freight under Prong A. IDOL regulations define "control" to mean "the existence of general control or right to general control, even though the details of work are left to an individual's judgment." 56 Ill. Admin. Code § 300.460. Although Illinois' Administrative Code contains a list of 25 factors that the Department "will examine" to determine whether direction or control exist . . . not all factors will be relevant in every case." Carpetland U.S.A., 776 N.E.2d at 180 (citing 56 Ill. Adm. Code § 2732.200(g) (2001)). Ultimately, "the result will be determined by 'the business reality or totality of circumstances,' not by the answer to any particular question or group of questions." Id.

The Illinois Appellate Court has held that delivery drivers were not free from control because the defendant "determined the rate charged for each delivery," "retained a record of each driver's commission," and because the messengers could not collect fees directly from customers. AFM Messenger Serv., 315 Ill. App. 3d 314-15. Illinois courts have also found that a company exerts control if it furnishes the putative employee with the contractor agreement. See Bennett v. Department of Employment Security, 175 Ill. App. 3d 793, 797 (1988) (in a regular independent contractor-employer relationship, the independent contractor furnishes the contract). In this case, Pigeon Freight required Plaintiffs and other delivery drivers to sing for independent contractor

---

[7] See Tsybikov, 2023 WL 4029823, at *1 (noting, in granting summary judgment on Prong C, that "Plaintiffs must have Defendants' logos on their delivery trucks.").

agreements, and paid them a set rate per mile. Plaintiffs were required to make the deliveries assigned to them by Pigeon Freight, and were required to follow dispatchers' specific instructions. They were also required to follow Pigeon Freight's policies and procedures, including instructions for reporting accidents and submit maintenance records the prohibition on having other passengers or pets in their truck, among other things. This evidence is sufficient to show Pigeon Freight's control over Plaintiffs under the IWPCA.

### B. Plaintiffs' Damages under the IWPCA

Under Illinois law, employers are prohibited from taking deductions from employees' wages unless the deductions are "(1) required by law; (2) to the benefit of the employee; (3) in response to a valid wage assignment or wage deduction order; [or] (4) made with the **express written consent** of the employee, **given freely at the time the deduction is made**." Costello v. BeavEx, Inc., 810 F.3d 1045, 1050 (7th Cir. 2016) (citing 820 ILCS 115/9)) (emphasis added). The employer bears the burden of establishing the applicability of any of these exceptions. 56 Ill. Admin. Code § 300.71. In interpreting the regulations, courts have found that, "a proper consent entails the employee having some idea what the actual deductions would be." Johnson v. Diakon Logistics, 2018 WL 1519157, at *8 (N.D. Ill. Mar. 28, 2018) (citing 56 IL Adm. Code 300.720) – that is, if the employee does not know the amount of the deduction in advance, consent to the deduction cannot be "freely given."[8] For example, deductions made to an employer's, customer or client's property are unlawful per se without written consent given at the time of the deduction.

---

[8] Prior to 2023, recurring deductions were only valid if the employer provided a mechanism for revoking consent to the deductions. 56 IL ADC 300.720(b) (effective Aug. 22, 2014) ("When a deduction is to continue over a period of time and the written agreement provides for that period of time, provides for the same amount of deduction each period **and allows for voluntary withdrawal for the deduction,** the agreement shall be considered to be given freely at the time the deduction is made.") (emphasis added). As of March 2023, the regulations provide that "[w]hen a deduction is to continue over a defined duration of time and the written agreement provides for that **defined duration of time** and provides for the **same amount** of deduction **each pay period**, the agreement shall be considered to be given freely at the time the deduction is made. **No agreements** for a defined duration of time shall last **longer than six months**." 56 IL ADC § 300.720 (emphasis added).

56 Ill. Admin. Code § 300.280. Moreover, an employer generally many not use deductions to shift the costs of doing business properly borne by an employer onto its employees unless the deductions are taken truly for the benefit of the employee.[9]

In this case, Pigeon Freight **did not** get Plaintiffs' express written consent, freely given, at the time each deduction was made from their pay, and **none** of the deductions made by Pigeon Freight were for the delivery drivers' benefit. Pigeon Freight made deductions from Plaintiffs' pay for items including occupational accident insurance (which are per se illegal),[10] maintenance, roadside service, speeding tickets, and logbook violations, among others. Plaintiffs were not informed of these deductions in advance, did not consent to the deductions in writing, and did not have the opportunity to contest these deductions. These deductions also benefitted Pigeon Freight – not Plaintiffs – since they represented Pigeon Freight's business expenses associated with its work as a delivery company.

In addition, under the IWPCA's expense statute, enacted in January 2019, employees are entitled to reimbursement "for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 Ill. Comp. Stat. 115/9.5(a). In this case, Plaintiffs incurred expenses for repair parts and tools which were incurred in the scope of their employment, and which were directly related to their work for Pigeon Freight. Plaintiffs are entitled to reimbursement of these expenses.

As set out above, Plaintiffs are entitled to reimbursement of the unlawful deductions made from their pay and the expenses they were forced to incur, which total **$8,673.80** for Kyle Ogden

---

[9] See, e.g., Kim v. Citigroup, Inc., 856 N.E. 2d 639, 649 (Ill. App. Ct. 2006) (holding that where deductions were authorized by employees to be placed into a stock savings plan that truly benefitted the employee, both in terms of stock savings and tax benefits, deductions were for the benefit of the employee).

[10] Pigeon Freight is required by Illinois law to provide employees with workers' compensation insurance. 820 Ill. Com. Stat. 305/4.

and **$12,250.00** for Anthony Lindsey, as well as statutory interest in the amount of 5% per month. 820 Ill. Comp. Stat. 115/14(a).

### C. Plaintiffs were Employees of Pigeon Freight under the FLSA

Plaintiffs were also employees of Pigeon Freight under the FLSA.[11] In analyzing whether a worker is an employee or an independent contractor, "[c]ourts assess the "economic realities" of the situation[.]" Perez v. Super Maid, LLC, 55 F. Supp. 3d 1065, 1076 (N.D. Ill. 2014) (citing Solis v. Intern. Detective & Protective Serv., Ltd., 819 F. Supp. 2d 740, 749 (N.D. Ill. 2011); Sec. of Lab., U.S. Dept. of Lab. v. Lauritzen, 835 F.2d 1529, 1534 (7th Cir. 1987; Harris v. Skokie Maid and Cleaning Serv., Ltd., 2013 WL 3506149, at *6 (N.D. Ill. July 11, 2013)). The economic realities test analyzes whether individuals are "actually dependent upon the business to which they render service." Solis, 819 F. Supp. 2d at 748 (internal quotation marks and citation omitted); see also Real v. Driscoll Strawberry Assoc., Inc., 603 F.2d 748, 755 (9th Cir. 1979) ("Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA."). The relevant factors are:

> (1) the nature and degree of the alleged employer's control of the manner in which the work is to be performed;
> (2) the alleged employee's opportunity for profit or loss depending upon his or her managerial skill;
> (3) the alleged employee's own investment in equipment or materials required for the work or his or her employment of workers;
> (4) whether the service rendered requires a special skill;
> (5) the degree of permanency and duration of the working relationship; and

---

[11] A number of decisions across the country have found that delivery drivers like Plaintiffs were employees of the companies that they worked for, both under the FLSA and under the more stringent "right-to-control" test. See Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 195 (S.D.N.Y. 2003) (holding that delivery workers were employees of Duane Reade pharmacy under the FLSA); see also Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033, 1047 (9th Cir. 2014) (holding that FedEx delivery drivers were employees under Oregon's wage laws); Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981, 988 (9th Cir. 2014) (holding that FedEx delivery drivers were employees for purposes of California's wage laws); Craig v. FedEx Ground Package Sys., Inc., 335 P.3d 66, 92 (Kan. 2014) (holding that FedEx delivery drivers were employees for purposes of Kansas' wage laws) (later adopted in In re FedEx Ground Package Sys., Inc. Employment Practices Litig., 792 F.3d 818, 820 (7th Cir. 2015)).

(6) the extent to which the service rendered is an "integral part" of the alleged employer's business.

See Skokie Maid, 2013 WL 3506149, at *6–7; Lauritzen, 835 F.2d at 1534–35). No single factor is dispositive. Perez, 55 F. Supp. 3d at 1076.

All of the factors listed above support Plaintiffs' claim that they were employees of Pigeon Freight. Pigeon Freight exercised control over all aspects of the delivery process, assigning deliveries to Plaintiffs, and providing instructions and time windows for each delivery. Plaintiffs were not permitted to turn down the deliveries assigned to them. Pigeon Freight required Plaintiffs to keep in regular contact with dispatchers, to promptly report accidents, and to submit paperwork for truck maintenance and repairs, among other things. Pigeon Freight penalized Plaintiffs for failing to follow these rules.

Plaintiffs had no opportunity for profit or loss, as Pigeon Freight negotiated directly with customers and set the rates for deliveries, paying Plaintiffs a set number of cents per mile. Pigeon Freight's investment in trucks and trailers, advertising, and hiring staff far exceeded Plaintiffs' investments. Plaintiffs' work required no special skill other than driving. Plaintiffs worked for Pigeon Freight exclusively for two to three years at a time. And Plaintiffs' work as delivery drivers was at the very heart of Pigeon Freight's business as a delivery company.

### D. Plaintiffs' Damages under the FLSA

The FLSA requires employers to pay employees minimum wage for all hours worked. See 29 U.S.C. § 206. In this case, each of the Plaintiffs has presented evidence of at least one pay period in which his pay fell below minimum wage as a consequence of the deductions taken by Pigeon Freight. Plaintiffs' minimum wage damages are summarized below. These calculations use the federal minimum wage rate of $7.25 per hour, and include liquidated damages, as provided for by the FLSA, 29 U.S.C. § 216(b).

| Plaintiff | Pay period end | Hours worked | Wages owed | Liquidated damages |
|---|---|---|---|---|
| Kyle Ogden | 10/24/22 | 70 | $507.50 | $1,015.00 |
| Anthony Lindsey | 01/09/2023 | 70 | $507.50 | $1,015.00 |
| **TOTAL** | | | | **$2,030,00** |

### E. Attorneys' Fees and Costs

As part of a motion for entry of default judgment, Plaintiffs may properly request attorneys' fees and costs.[12] The fee analysis begins with determining the lodestar, which is "the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In evaluating the reasonableness of a fee request under the lodestar analysis, courts examine the following factors: 1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–19 (5th Cir.1974); Hensley v. Eckerhart, 461 U.S. at 430, n. 3 (1983); Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir.1986).

In this case, Plaintiffs' counsel have expended a total of 27 hours on this case, for a lodestar of **$9,090.00**. See Declaration of Bradley Manewith (attached hereto as Exhibit C) at ¶ 8. In addition, Plaintiffs' counsel have incurred costs in the amount of **$2,289.93**. See Id. at ¶ 9. The

---

[12] Awards of reasonable attorneys' fees and costs are available both under the FLSA (29 U.S.C. § 216(b)) and under the IWPCA (820 ILCS 115/14).

13

lodestar for Plaintiffs 'counsel is reasonable. Plaintiffs' counsel have expended significant efforts in this case to interview the Plaintiffs and investigate their claims, research possible theories of recovery under the IWCPA and the FLSA, file a Complaint and subsequent Amended Complaint, attend court hearings, attempt in-person service, request a default against Defendants, and now, request an entry of default judgment. In addition, if default judgment is entered, Plaintiffs' counsel will continue to expend significant efforts to attempt to collect on the judgment.

Plaintiffs' counsel at Lichten and Liss-Riordan are highly knowledgeable and experienced in the area of class and collective action litigation, and have litigated and settled numerous class action matters filed in state and federal courts around the country. See Ex. C ¶¶ 3-5. Attorney Bradley Manewith has significant experience litigating class and collective actions on behalf of workers in various industries in Illinois, and has obtained favorable rulings which have helped develop the caselaw on the IWPCA. Id. at ¶ 4. Attorney Harold Lichten has served as lead counsel representing workers in dozens of misclassification cases, both in Illinois and around the country. Id. at ¶ 5. Plaintiffs' counsel are knowledgeable and experienced, and have provided the Plaintiffs with a high degree of expertise in the instant action.

Plaintiffs' counsel are also confident in the strength of this case, and have taken significant risks in bringing this action. Plaintiffs' counsel work almost exclusively on a contingency fee basis, and this case was no different; thus, Plaintiffs' counsel accepted financial risks by taking on this litigation knowing that if Plaintiffs lost on the merits, or were otherwise unable to collect on a judgment, they would not be compensated for their efforts nor would they receive reimbursement of their litigation expenses. And by taking this action, Plaintiffs' counsel did so to the potential exclusion of other cases. The lodestar figure of $9,090,00 is reasonable in light of the time and effort that Plaintiffs' counsel have dedicated to this action, their experience in this area of law, and the various risks that were undertaken by counsel in bringing this case.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment should be granted, and Plaintiffs should be awarded their damages, attorneys' fees and costs in the amounts set out above.

Dated: December 8, 2023                                   Respectfully Submitted,

/s/ Bradley Manewith

Bradley Manewith, IARDC # 6280535
Lichten & Liss-Riordan, P.C.
5 Revere Drive, Suite 200
Northbrook, IL 60062
Tel. (617) 994-5800
Fax (617) 994-5801
bmanewith@llrlaw.com

Harold L. Lichten (*pro hac vice*)
Mel Gonzalez (*pro hac vice*)
Olena Savytska (*pro hac vice*)
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Ste. 2000
Boston, MA 02116
Tel. (617) 994-5800
Fax (617) 994-5801
hlichten@llrlaw.com
mgonzalez@llrlaw.com
osavytska@llrlaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

    I, Bradley Manewith, hereby certify that a true and accurate copy of this document will be served on Defendants Pigeon Freight Services, Inc., and Sergiu Tintuic by process server, by U.S. Mail and by UPS Overnight Delivery to the following addresses:

Pigeon Freight Services, Inc.
c/o Sergiu Tintuic
16830 Chicago Ave
Lansing, IL, 60438

Sergiu Tintuic
6 Jacqueline Lane
Fox River Grove, IL, 60021

                                                                           /s/ Bradley Manewith
                                                                           Bradley Manewith